108 So.2d 797 (1959)
Blas ALVARES et al., Plaintiffs-Appellants,
v.
C. E. RUSH, Jr., et al., Defendants-Appellees.
No. 8928.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1959.
*798 Watson & Williams, Natchitoches, for appellants.
Julian E. Bailes, Natchitoches, for appellees.
AYRES, Judge.
This is an action in tort. Plaintiffs, four in number, seek to recover damages resulting from a motor vehicle collision occurring about 9:00 o'clock P. M. January 27, 1956, on Highway 1 about one mile north of the Village of Derry, Natchitoches Parish. The collision occurred between plaintiff Bias Alvares' automobile and a truck-trailer unit equipped to haul cattle, owned by defendant Rush and operated by his employee, defendant Miller. In addition to Alvares, the plaintiffs are Nick Rodriques, Julio Mendoza and Fidensio Moreno, who were his guest passengers.
The plaintiffs, laborers of the Texas & Pacific Railway Company, lived in railroad cars of a work train, which at the time was parked on the railroad tracks parallel to and approximately 100 feet west of the highway in the immediate vicinity of the site of the accident. All were seated in the Alvares car, which was parked on the west side of the highway facing south. While so parked, the truck and trailer unit, proceeding on the highway in a southerly direction, struck the car, knocking it into the ditch and causing it, on coming to rest, to face in a northerly direction. The truck-trailer combination jackknifed and likewise came to rest in the ditch beyond the automobile.
Negligence charged to Miller is that he was driving at an excessive rate of speed without having his vehicle, which was allegedly equipped with faulty and inadequate brakes and headlights, under proper control, and in not maintaining a proper lookout, as a result of which he permitted the vehicle to proceed beyond the edge of the pavement and strike the rear end of the Alvares car. These charges of negligence are denied by defendants, who contend that the accident was caused by the fault of Alvares, who, allegedly, suddenly and without giving any warning, signal or indication of the maneuver intended, backed onto the west lane of the highway immediately ahead of defendant's truck and in its lane of travel. In the interval of time and of space allowed, defendant's driver was afforded no opportunity to even apply his brakes or to take any other effective means to avoid the accident. Defendants' contentions were upheld by the trial court and, accordingly, judgment was rendered rejecting plaintiff's demands, from which they appealed.
Primarily, only factual issues are involved. From our review of the record and from our understanding and appreciation of the evidence, plaintiffs have, in our opinion, established their claims by a vast preponderance of the evidence, and we are, therefore, constrained to disagree with the conclusions reached by our distinguished brother of the district court.
*799 The record establishes these facts: Plaintiff Alvares, with his three guests, parked his automobile on the right-hand side of the highway facing south at the south side of a private driveway leading to the residence of a local citizen. It does not appear that the vehicle was entirely on the shoulder of the highway but that the rear left wheel, and possibly the left front wheel, remained on the pavement. The rear red parking lights were burning and the vehicle had been stopped for some three to five minutes prior to the collision. The left rear light was smashed but the right rear light remained in operation after the collision.
There is no contention or proof that plaintiff Alveres, in parking his automobile, left an unobstructed width of less than 15 feet upon the main traveled portion of the highway opposite his vehicle for the free passage of traffic. From the proof, however, it appears that the highway was straight for several hundred yards, possibly a mile, in both directions from plaintiff's car, and that an approaching motorist had a clear view for, at least, several hundred feet, even though it was cloudy, a mist of rain threatening, and the road surface damp. The car, as aforesaid, was equipped with proper and adequate lights properly functioning at the time of the collision.
The record does not support defendants' contention that plaintiff backed his car onto the highway or across the right or west lane of traffic or that he suddenly "dug out" or took off ahead of defendant's truck. Plaintiffs, as stated, were parked, awaiting the appearance of one Barragen, who was then pressing in his apartment in one of the railroad cars preparatory to a contemplated trip to Alexandria. In support of this position, defendants rely upon the testimony of the defendant, Miller, and the existence of certain physical facts related by the State trooper investigating the accident. The trooper testified there were marks upon the paved highway showing a sudden movement of the car backward and then forward whereby plaintiffs "dug out" ahead of the truck. Under the prevailing weather conditions and the evident frequent use made of the roadway and shoulders by the parking of the several cars of personnel of the railroad work crew in the vicinity, little credence could be given to this testimony, which is contradicted not only by all the plaintiffs but by Oscar Lazano. Lazano, while sitting in the entrance to his railroad car apartment from 100 to 150 feet away, saw the accident. He testified plaintiff's car had been parked, three, four or five minutes and was not moving at the time it was struck. On going immediately to the scene of the accident, he found the right rear light burning.
From the evidence, it could only be concluded that the proximate cause of the accident was defendant's driver's negligence and failure to keep and maintain a proper lookout. He testified the highway was straight for possibly a mile and that he was traveling within legal speed limits. Although there was no obstruction to his view, he first observed plaintiff's car so near he had no time even to apply his brakes. Obviously, the car was there for him to see and which he could have seen, with its two rear lights in full operation, had he made even a casual observation. No reason other than his failure to make proper observation has been established why he could not, and should not, have seen plaintiff's automobile in ample time to have taken effective means to prevent the accident. This he could have certainly done by slightly steering his truck to the left, particularly in view of the fact there was no oncoming traffic at the time.
The jurisprudence is so well established, as to obviate the necessity of citation of authority, that whatever the operator of a motor vehicle can see, he should and must see, and in legal contemplation is charged with seeing. His failure to exercise due diligence in that regard constitutes negligence, and, under the facts of the instant case, actionable negligence and the proximate cause of the accident.
*800 It would be of no comfort or relief to defendants should it be held that plaintiff Alvares was negligent in parking his car as aforesaid. The primary duty of those who operate motor vehicles upon the public highways is to keep a sharp constant lookout ahead to discover the presence of those who might be in danger. Rottman v. Beverly, 183 La. 947, 165 So. 153. This duty never ceases, and when one sees another in peril, of which the other is not aware, then a second or subsequent duty arises and devolves upon him, which duty is then to use every possible available means to avert the injury. If he fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury, and the negligence of the other party in putting himself in a place of peril the remote cause. This duty devolves upon one not only when he actually sees another in peril but whom he did not see but could and should have seen had he been looking ahead and making proper observation. Jackson v. Cook, 189 La. 860, 181 So. 195. It is, therefore, abundantly clear that defendant Miller had every opportunity to see plaintiff's vehicle or his rear lights from a considerable distance and in time to avoid the collision. His failure to do so is inexcusable. In any event, he had the last clear chance to avoid the accident. Therefore, should it be held Alvares was negligent, the doctrine of discovered peril would find appropriate application under the facts of this case.
Lastly for consideration is the question of quantum of damages. Nick Rodriques sustained a laceration of the scalp and a cerebral concussion, a disturbance of vision, and headaches. He was hospitalized in Natchitoches for two days and then in the T. & P. Hospital in Marshall, Texas, from February 2 to 7, inclusive, and from February 14 to 25, inclusive. He lost a month's work. For the aforesaid injuries and for the pain and suffering experienced, $2,000 would apparently constitute adequate compensation. This he should be awarded, plus special damages of $292.38 for loss of wages and $144.40 for hospital and medical care, or a total of $2,436.78.
Plaintiff Bias Alvares is not shown to have sustained any serious or permanent injuries. However, his face was scratched and his back was hurt, and on account of the injuries he lost two days from work. For the injuries sustained and the pain and suffering undergone, we conclude that $250 is adequate, which he should recover, in addition to $26 for loss of wages and $625 for the loss of his car, which was totally destroyed, or a total of $901.
Neither was Fidensio Moreno seriously injured nor did he sustain any serious pain or suffering. However, he did sustain some pain and suffering and $100 would appear to adequately compensate him therefor.
By far the most seriously injured was Julio Mendoza. He sustained seven fractured or broken ribs on his left side and five on his right side and a punctured lung, on account of which he developed pneumonia. Other injuries included the fracture of four lumbar vertebrae and the fracture of the mandible in two places. He experienced extreme pain and, on developing pneumonia, was placed in an oxygen tent. His hospitalization included four days in Natchitoches, after which he was transferred by ambulance to the T. & P. Hospital in Marshall, Texas. He was referred April 6 to an orthopedist in Shreveport and then returned to the hospital and released on April 13, 1956. He was further hospitalized at the same institution from April 28 to May 10, 1956, and on several subsequent occasions until November 15, 1956, when he was finally discharged as able to return to work. However, on the date of trial, February 28, 1957, he could not work without the use of a belt to support his body. For the injuries sustained and the pain and suffering undergone, $5,000, as suggested by his counsel, could not be said to be excessive. This amount he should recover, plus special damages of $2,726 for loss of wages and $888.55 *801 for hospital and medical care and treatment, or a total of $8,614.55.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside, and it is now ordered, adjudged and decreed there be separate judgments in favor of each of the plaintiffs against the defendants, C. E. Rush, Jr., and Clyde O. Miller, in solido, for the following amounts:

 Nick Rodriques ---------- $2,436.78
 Blas Alvares ------------ 901.00
 Fidensio Moreno --------- 100.00
 Julio Mendoza ----------- 8,614.55,

together with five percent per annum interest on each of said sums from judicial demand until paid, and for all costs, including the cost of this appeal.
Reversed and rendered.