AYRES, Judge.
This action was instituted by plaintiffs, husband and wife, for recovery of damages resulting from an automobile collision *341 occurring about 9:30 o’clock p. m. July 24, 1958, on Linwood Avenue near its intersection with Claiborne Avenue in the City of Shreveport.
Made defendants were William W. Mar-ston and his liability insurer. However, a non-suit was entered as against Marston. The defendant insurer, conceding the fault of its insured, admitted liability. Therefore, the trial had before a jury was limited to the question of the quantum of damages necessary to compensate Mrs. Hudson for the injuries sustained and the expenses incurred by the husband as a result thereof. The aforesaid expenses were stipulated in ■the sum of $1,420.02. Pursuant to a verdict of the jury there was judgment in favor of plaintiff, Charles R. Hudson, for the aforesaid sum and in favor of Mrs. Hudson for $7,000.
Mrs. Hudson filed a motion for additur in the minimum amount of $8,000 and, in the alternative, for a new trial. In disposing of the motion, the trial judge frankly indicated that in his opinion the award was inadequate and, accordingly, made this comment:
“The ‘estimate’ of the amount of damage to be allowed for pain and suffering is a matter that is peculiarly within the province of the jury. We do not feel that the Trial Court should substitute its judgment for the judgment of the jury, although at the time the jury rendered its verdict we felt that the amount allowed Mrs. Hudson was inadequate. We did not at the time determine the amount we would have allowed; and since the conclusion of the trial of this case we tried two other cases involving back injuries, and since we do not have the evidence before us, we hesitate to judicially determine the amount, if any, by which the judgment rendered should be increased. We may have gone as high as $10,000.00, or possibly more.”
From the judgment in her favor Mrs. Hudson perfected an appeal to this court and urges that the award be increased to $20,000. She further contends that the fees for the expert witnesses testifying in her behalf should be fixed and taxed as costs. Defendant insists that the award made by the jury and as approved by the court is adequate and sufficient and should be affirmed. Therefore, the only issues presented for resolution on this appeal relate to the quantum of damages which should be awarded Mrs. Hudson and the fixing and taxing as costs of the aforesaid expert witness fees.
The facts of the occurrence of the accident, so far as material to the issues presented, may be briefly stated. Plaintiff, Charles R. Hudson, accompanied by his wife, was driving his 1949 Chevrolet automobile in a northerly direction on Linwood Avenue. Prior to entering the intersection of Linwood with Claiborne Avenue, he brought his vehicle to a stop in response to an unfavorable traffic light. His wife was seated beside him, with her left arm on the back of the seat and her head resting on her arm. After a brief interval plaintiff’s Chevrolet was struck from the rear by an automobile driven by defendant’s insured, William W. Marston. The impact jerked Mrs. Hudson backwards and then threw her forward, whereupon she was lodged between the steering wheel and the dashboard. Her head hit some part of the car. From the accident she experienced shock and felt a catch in her back; nevertheless, she did not at the time believe she was seriously injured, although during the investigation of the accident by a police officer, while sitting on the edge of the front seat, with the door open and her feet extending out of the car, she fainted, fell backwards on the seat and became momentarily unconscious. Mrs. Hudson was carried to her home and placed in bed, but two days later admitted to the Schumpert Sanitarium for treatment.
At the time of the accident Mrs. Hudson was 27 years of age. She had been a chronic epileptic since the age of 15. Because of her affliction she consulted and was *342 treated by several doctors; finally, by Dr. D. H. Duncan, who made a diagnosis of epilepsy, after which she was referred to Dr. J. B. Sutton, now deceased, for treatment. During the course of Dr. Sutton’s treatment and subsequently by Dr. James H. Shipp, a neurologist, she was administered anti-spasmodic drugs, particularly dilantin, to control her condition. The treatments were successful in prolonging the intervals between seizures or convulsions and in reducing their intensity or severity. On one occasion 18 months elapsed without a convulsion. Upon the contraction of an infection a mild seizure then resulted. Several months elapsed without another onset and the seizures became intermittent until this accident occurred. Dr. Shipp, following Dr. Sutton’s death, treated plaintiff for four or five years preceding this occurrence. During this period her condition was kept under control and continued in like manner until the occurrence of the accident, prior to which the seizures were restricted to intervals of approximately two and a half months and were preceded by either some infection or mental strain.
On the night of her admission to the sanitarium, plaintiff experienced a severe convulsion, lasting some six or seven minutes, or about three times the length of previous seizures. A second seizure followed the same night — six convulsions in all in three days. Another attack occurred on the day she returned home from the hospital. Other attacks have followed, at the rate of three to four per week and have continued at an ever increasing frequency and severity. During the first two months following the accident the frequency of the attacks increased three-fold and in six months thereafter five to six times that which occurred prior to the accident.
Formerly, Mrs. Hudson experienced a premonition or an awareness of the approach of an impending attack or seizure. By this warning plaintiff took precaution to protect herself by lying down and placing some object in her mouth. There is no longer a premonition or warning of an attack about to occur. Plaintiff has no opportunity to protect herself from falls or from the biting and mutilation of her tongue. These seizures may be likened to the actions of a contortionist, super-induced by the agony of excruciating pain.
The experts were unable to make any definite prognosis or estimation of time in which plaintiff may recover and attain a status comparable to the conditions existing prior to the accident. Although there was an expressed hope of regaining control' and attaining that condition by continued medication, improvement was said to be adversely affected and retarded by the injury to the back because of the pain experienced there, which induces further attacks and adversely affects the result of medication.
Dr. Ray E. King, an orthopedist, treated plaintiff immediately following her injury. As to plaintiff’s back he diagnosed the condition as one of ruptured or pulled muscles. The usual treatments, heating pads, hot baths, traction and various forms of back braces, failed to bring the desired relief. Dr. Shipp, who was plaintiff’s family physician but who was absent at the time of her accident, examined plaintiff August 4, 1958, and his examination revealed a moderately severe muscular spasm through the lumbar and lower back and tenderness on the right side. She, in his opinion, was suffering immense pain in her back.
Drs. Shipp and King were of the opinion that trauma may be a precipitating cause of epilepsy and, moreover, that trauma may aggravate or worsen a pre-existing epileptic state or condition. As a result of their examinations and from the occurrence of the accident itself, both were of the opinion that plaintiff’s condition or affliction was actually aggravated and worsened as a result of the accident. Dr. Carson R. Reed, an orthopedist, who examined plaintiff for the defendant, expressed no contrary opinion.
*343 Although it is clear that Mrs. Hudson was afflicted with epilepsy and a back predisposed to injury prior to the accident, the conclusion is inescapable that both of these conditions have been aggravated, worsened and exaggerated as a result of the accident. Prior to the accident Mrs. Hudson had learned to live with her condition. She performed the usual household tasks and cared for her two children as well as tier invalid mother. Since the accident her household activities have been almost entirely curtailed. She is no longer able to look after and care for her children or her mother. A great part of the time she is ■confined to bed and in traction. She has lost self-confidence and the neighbors testified she had become depressed and moody, whereas formerly she was cheerful and energetic and experienced no difficulty or pain in her back. She is now generally nervous, tense and upset. The pain in her back was thought by the medical experts to be coming either from a ruptured disc .and/or an edema affecting the nerve root. Even the opinion was expressed that plaintiff might benefit from the removal of the Sth lumbar disc and the spine fused at that point, but the procedure could not be entertained unless there was imminent danger of her losing function in the involved nerve root or unless she became unable to further tolerate the pain and discomfort.
We have not been cited any case of comparable injuries and aggravations of preexisting conditions as suffered by Mrs. Hudson. We were likewise unsuccessful in our own independent search of the authorities. Considering the immense pain and suffering, the distress, discomfort and anxiety, and the permanent disabilities resulting from the aggravation, worsening and exaggeration of the pre-existing epileptic state and back condition, we have concluded, as the trial judge frankly indicated, that the award is grossly inadequate and should be increased. The award to Mrs. Hudson should be, in our opinion, in order to compensate her, so far as possible, increased to the sum of $15,000, which, under the facts and circumstances disclosed by the record to exist and to have existed in this case, appears not to be excessive.
On the question of expert witness fees, the record discloses plaintiffs filed and urged in the district court, after judgment was rendered and signed, a motion to have such fees fixed and taxed as costs. Drs. King and Shipp are both engaged in a highly specialized field of the medical profession. From our appreciation of their knowledge of the subject-matter at issue, the value and importance of their testimony, and the time consumed, we are of the opinion that a fee of $50 to each is proper.
For the reasons assigned, the judgment appealed is amended by increasing the award of damages in favor of Mrs. Nellie Frances Hudson and against the defendant, American Employers Insurance Company, from $7,000 to $15,000, and fixing and taxing as costs the expert witness fees of Drs. James H. Shipp and Ray E. King at the sum of $50 each, and that the judgment, as thus amended, is affirmed at defendant-appellee’s cost.
Amended and affirmed.