142 So.2d 853 (1962)
Leo WEST et al.
v.
T. L. JAMES & COMPANY, Inc., et al.
No. 5557.
Court of Appeal of Louisiana, First Circuit.
May 16, 1962.
Rehearings Denied June 29, 1962.
*854 Curtis, Foster, Dillon & Huppenbaver, by Gerard M. Dillon, New Orleans, for appellants.
O'Neal & Waitz by A. Deutsche O'Neal, Houma, for appellees.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
This lawsuit arises out of an automobile accident which occurred late in the afternoon of June 13, 1958, on Louisiana Highway 1 between Labadieville and Thibodaux, Louisiana, and more particularly at a point on said highway approximately four miles north of the latter community. Immediately preceding the collision plaintiff West, driving his 1955 Ford automobile toward Thibodaux, was following and attempting to pass a dump truck belonging to defendant T. L. James & Company, Inc., and being operated by its employee, Murphy Guidry, who was admittedly acting within the scope and during the course of his employment by his said employer. The accident transpired when defendant's truck attempted a left turn to cross a bridge spanning Bayou Lafourche which parallels and adjoins said Highway 1. Named as defendants herein are T. L. James & Company, Inc. and Murphy Guidry, owner and driver of the truck, respectively, and National Surety Corporation, liability insurer of defendant T. L. James & Company, Inc. After trial in the court below judgment was rendered June 28, 1961 against all defendants, in solido, in favor of plaintiff Leo West in the sum of $2,561.57 (representing damages to his said automobile and certain medical and hospital expense incurred on behalf of his wife, Jeanette Brown West) and in favor of Mrs. West (a guest passenger in plaintiff's vehicle) in the sum of $22,500.00 for personal injuries sustained in the accident. From the judgment casting them as aforesaid, all defendants have appealed.
Trial of this matter in the court below was concluded May 25, 1960. Subsequently, on September 30, 1960, defendants filed a Third Party Petition predicated upon Act 30 of 1960, LSA-C.C. art. 2103, seeking to make plaintiff Leo West a Third Party Defendant herein, as an alleged joint tort feasor and as such liable to contribution to defendants in the event of recovery by plaintiff Jeanette Brown West. To defendants' said Third Party Petition plaintiff Leo West filed exceptions of no right and no cause of action. On July 3, 1961, judgment was rendered in the court below sustaining plaintiff's said exceptions and dismissing defendants' Third Party Complaint. All defendants have appealed the judgment of the trial court in this regard. For reasons which will hereinafter appear manifest, we defer consideration of defendants' Third Party Petition until we have examined into the merits of this cause.
A somewhat detailed description of the scene of the accident will afford a better *855 understanding of the issues raised by the case at bar. Louisiana Highway 1 is a paved two-lane highway which, on the date of the collision in question, was undergoing improvement consisting of widening the paved surface thereof. North of the bridge onto which defendant's truck intended to turn is situated an "S" curve which terminates at a distance of approximately 400 yards from the bridge in question. Between the southerly end of said "S" curve and the bridge the highway, for all practical purposes was straight for a distance of several hundred feet. Both West and defendant's driver Guidry were approaching the bridge from the north, plaintiff's vehicle following behind the truck. Because of the construction in progress delineator posts (consisting of black and white striped two by fours) had been placed near the edge of the then existing paved surface of the roadway as a guide to motorists. At a point approximately 350 feet north of the bridge a truck crossing sign was erected on the right shoulder of the highway. A 20 mile per hour speed limit sign had been posted on the right side of the highway an estimated 900 feet north of the previously mentioned "S" curve.
The positions of the respective parties may be briefly stated as follows: Plaintiffs contend the accident occurred solely because of the negligence of defendant Guidry in failing to keep a proper lookout; failing to give any signal whatsoever of his intention to make a left turn and executing a left turn when plaintiff's overtaking vehicle was so close as to make such a maneuver dangerous. Defendants maintain that Guidry was free of any negligence whatsoever and that the sole proximate cause of the accident was the negligence of plaintiff Leo West in failing to keep a proper lookout; driving at an excessive rate of speed under the prevailing circumstances; failing to have his vehicle under proper control; failing to see the left turn signal given by Guidry both by hand and electric turn indicator on the truck and failure to heed the warning signs hereinabove mentioned. Alternatively, defendants plead contributory negligence of plaintiff Leo West in the respects above mentioned. Defendants also plead the independent contributory negligence of plaintiff Jeanette Brown West consisting of her asserted failure to exercise due care, failure to protest her host's negligent operation of his vehicle and failure to warn her host of obvious hazards.
Plaintiff Leo West testified that he had been following defendant's truck for a distance of two or three miles waiting an opportunity to pass. Several times plaintiff attempted to get ahead of the truck but was unable to do so because of oncoming traffic. West stated that he ultimately pulled halfway into the left lane of travel, observed that the oncoming lane was free of approaching traffic, accelerated the speed of his vehicle to pass the truck, drove completely into the left lane and commenced to pass Guidry. According to West, when the front of his automobile reached a point approximately even with the rear wheels of the truck, the driver of the latter vehicle, without giving any signal whatsoever, commenced a left turn. Faced with the resulting emergency West applied his brakes and veered his vehicle sharply to the left to avoid the impending collision but his efforts in this regard were unsuccessful for the right side of his vehicle struck the left rear corner of the dump body of defendant's truck. There is no dispute but that plaintiff's vehicle left skidmarks 35 feet in length commencing on the highway and ending at the point of impact which by agreement of the parties is shown to be on the left shoulder of the highway a short distance from the edge of the paved surface thereof. Plaintiff denies that he was traveling too closely behind the truck as contended by defendants. West testified that he always maintained a safe distance to the rear of the truck except when he attempted to pass and that he could have stopped his vehicle to avoid striking the truck had Guidry stopped his vehicle at any time. West estimated the speed of defendant's *856 truck to be 15 to 18 miles per hour at the time he attempted to pass and his own speed to be two or three miles per hour faster than that of the truck. With respect to the signs West acknowledged having noted the delineator posts but denies having seen either the 20 mile per hour speed limit sign or the truck crossing sign.
In general Mrs. West corroborated the testimony of her husband. She further stated that there was nothing about the action of either her husband or the driver of the truck to cause her any concern. She further testified that she observed the truck at the time Mr. West attempted to pass and that the truck driver gave no signal of his intention to turn left. She also stated that she was the first to observe the left turn movement of the truck and warn her host driver.
Defendant's driver, Murphy Guidry, testified he had been proceeding at a speed of approximately 45 miles per hour but upon approaching the bridge where he intended to turn, reduced his speed to an estimated 20 to 25 miles per hour. Guidry acknowledged that the dump body of the truck was of such construction as to block his view to the rear except through a rear view mirror mounted on the front left side of his vehicle. When he reached a point approximately 300 feet north of the bridge he looked in his rear view mirror and observed no vehicle following his truck. He then turned on his left turn indicator signal, noted that it was in operation and proceeded along the highway until he reached a point about 150 feet from the bridge where he again consulted his rear view mirror and again detected no following vehicle. At a point estimated to be 50 feet from the bridge he looked into his rear view for the third time and observing no vehicle behind him commenced to turn off the highway to his left. After beginning his turn he heard a horn blow, observed dust billowing from the rear of the truck and instantly the collision occurred. Guidry frankly conceded that at no time did he see plaintiff's overtaking vehicle. He attributed his failure to see plaintiff's automobile to the fact that plaintiff must have been following at a distance of not more than 25 to 30 feet and was therefore so close to the truck that the body of the truck hid plaintiff's automobile from view and rendered plaintiff's automobile incapable of being seen in the truck's rear view mirror. It appears that because of the manner in which the dump body of the truck was constructed, a motorist traveling within 25-30 feet to the rear of the truck would be within a so-called "blind area" in which he could not be seen by the driver of the truck even in the rear view mirror.
In large measure the testimony of Guidry was corroborated by that of his fellow worker, Oree Landrum, who testified that he was following plaintiff at a distance of approximately 400 yards. In substance Landrum stated that as he rounded the curve he saw the Guidry truck with its left turn blinker light operating. According to Landrum when he first saw the vehicles plaintiff's car was directly behind the truck in the right lane of travel. Landrum also testified that plaintiff and Guidry both pulled to the left at about the same time. He could not tell how close plaintiff's vehicle was to the truck when plaintiff attempted to pass but considered the distance to be "pretty close". He could not testify with certainty that plaintiff was so near the truck as to be within the "blind spot".
The learned trial court, in his written reasons for judgment appearing in the record of this case, discounted Landrum's testimony to a considerable degree for the reason that he concluded the witness was afforded only a glimpse of the accident. Landrum's testimony in this regard reveals that he only saw the truck "* * * just a little before the accident happened". When pressed for an estimate as to the interval in which the truck was within his vision before the accident he confessed "It just happened so fast that I couldn't estimate it exactly." We believe as did the learned trial judge that Landrum's view of the accident was extremely limited. There *857 appears no question but that he observed the vehicles only briefly as he rounded the curve and that his testimony is therefore entitled to but little weight.
The learned trial court discounted Guidry's testimony virtually in its entirety and expressed the opinion that Guidry was not testifying to the truth. This conclusion was based upon certain contradictions between said witness's trial testimony and a previous deposition. In addition Guidry testified upon cross-examination as follows:
"Q You looked fifty (sic) before you started making the turn and saw nothing and how far was it past back up there that you say you looked?
"A Well, the signal light went on from some three hundred and some feet and if you got the signal light on, a car ain't supposed to make around you if you got the signal light that you are going to make a left turn." Tr. 215.
The present action involving a left turn accident we believe the following observations made in Sharp v. Travelers Indemnity Company, La.App., 122 So.2d 833, appropos:
"The jurisprudence of this state is firmly established to the effect that a motorist making a left turn is under the duty of first ascertaining by careful observation that such a maneuver can be safely executed. Emmco Ins. Company v. Fidelity & Casualty Company of New York, La.App., 117 So.2d 782.
"It is equally well settled in our jurisprudence that a left turn is a dangerous undertaking and shall not be attempted unless and until the motorist endeavoring to accomplish such movement shall first ascertain the roadway is clear of oncoming and overtaking vehicles. Fornea et al. v. Crain, La. App., 79 So.2d 95.
"Although the learned trial judge did not favor us with written reasons for his judgment it is obvious that, in rejecting plaintiff's principal demand and awarding judgment in favor of plaintiff in reconvention, he concluded Sharp's negligence was the proximate cause of the collision. That Sharp was guilty of negligence in not keeping a proper lookout is established by his own testimony to the effect he did not see the overtaking Smith vehicle at any time prior to actual impact. Despite plaintiff's assertion he looked to his rear before commencing his turn, he was, nevertheless guilty of negligence in not observing the Smith automobile for, in legal contemplation to look and not see is the equivalent of not looking at all. Vigilant Insurance Company v. Lumberman's Mutual Cas. Co., La. App., 85 So.2d 87; Ehtor v. Parish, La. App., 86 So.2d 543; Alvares v. Rush, La.App., 108 So.2d 797."
From the foregoing it is obvious that it was incumbent upon Guidry to ascertain that his intended left turn could be made in safety without endangering either overtaking or approaching traffic. The record as a whole does not justify excusing his failure to detect the presence of plaintiff's vehicle on the ground that plaintiff was within 25 to 30 feet of the rear of Guidry's truck from the time Guidry first looked into his rear view mirror until the moment he commenced his turn and plaintiff was therefore out of Guidry's line of vision during this entire time. To so hold is tantamount to accepting the testimony of a witness whose evidence was virtually rejected by the trial court for manifest good cause appearing in the record while at the same time rejecting the testimony of witnesses whom the learned trial court found reason to believe. Both plaintiffs testified unequivocally that Mr. West was traveling a safe distance behind Guidry's truck until he prepared to pass the vehicle ahead at which time he then reduced the distance between the two vehicles. Under such circumstances there appears no valid reason why Guidry did not *858 notice plaintiff's vehicle if he looked into his rear view mirror as he testified. In legal contemplation to look and not see is the equivalent of not looking at all. We are convinced that the sole proximate cause of this accident was Guidry's failure to see plaintiff's vehicle which he could and should have seen had he exercised reasonable care under the circumstances.
Our esteemed brother below found that Guidry did not travel a distance of some 300 feet with his left turn indicator operating before commencing his turn as argued by defendants. Instead he concluded that if Guidry did place his turn indicator in operation as defendants contend, he did so either at the moment of commencing his turn or after plaintiff had pulled into the left lane and began to draw alongside the truck and therefore the signal was given too late. We believe our learned brother below correctly resolved this crucial factual issue in favor of plaintiffs herein. In any event his finding in this regard is clearly without manifest error and is therefore entitled to affirmation.
The inference of excessive speed on the part of plaintiff West which defendant seeks to draw from the undisputed fact that plaintiff's vehicle skidded a distance of 35 feet is not warranted in the case at bar. The record shows that at the scene of the accident the surface of the highway was strewn with fine gravel commonly known and referred to as "pea gravel" which material is conducive to skidding. Unquestionably the presence of this "plea gravel" on the surface of the highway increased and accelerated the rate at which plaintiff's vehicle skidded when plaintiff applied his brakes. Further corroboration of the reasonableness of plaintiff's speed is found in the fact that, although the injuries to Mrs. West ultimately proved to be extremely serious as hereinafter shown, the force of the blow caused by the impact was relatively light.
The learned trial judge found the negligence of Guidry to be the sole proximate cause of the accident and that plaintiff Leo West was free of negligence. We concur in both said conclusions.
Defendants contend the award of $22,500.00 to Mrs. West for personal injuries sustained in the accident is grossly excessive and should be reduced substantially. At the time of her injury, Mrs. West was 28 years of age and in the seventh month of pregnancy for her fifth child. Immediately following the accident she was confined to a local hospital in which she remained for a period of 13 days. During the first four or five days of her hospitalization Mrs. West experienced most severe premature labor pains which subsided somewhat about the fifth day but which returned when she attempted to leave her bed. During this period she also experienced back pains. Both Mrs. West and her attending physician, Dr. Powell, a general practitioner, feared she would deliver prematurely. Dr. Powell did not testify at the trial and a stipulation appearing in the record provides that no inference or assumption unfavorable to Mrs. West shall be drawn from or attributable to Dr. Powell's failure to testify on her behalf. A brief medical report by Dr. Powell appearing in the record reveals that he diagnosed Mrs. West's injuries as: (a) threatened abortion due to premature labor induced by trauma; (b) contusions of abdominal and lumbar area; (c) back strain, severe lumbar and (d) cystitis and pyelonephritis. Upon discharging Mrs. West, Dr. Powell suggested she consult an orthopedist.
After her discharge by Dr. Powell Mrs. West continued to suffer from severe back pain but she deferred consulting a specialist as suggested by Dr. Powell because of her frevent hope that the pain would disappear without further treatment. The pain persisted, however, and eventually on December 12, 1958, Mrs. West sought treatment from Dr. Byron Unkauf, an orthopedic specialist, who suggested a myleogram to determine the exact cause of Mrs. West's continued severe back pain. Mrs. West *859 declined to undergo the myleogram at that time. She again consulted Dr. Unkauf in April, 1959, and again refused to submit to a myleogram. On May 8, 1959, Mrs. West finally agreed to undergo the suggested examination which revealed what amounted to a ruptured disc involving the fourth and fifth lumbar interspaces. Upon thus detecting the condition mentioned, Dr. Unkauf performed a laminectomy May 11, 1959. For a period of approximately 60 days following the aforesaid operation Mrs. West was relatively free of pain but subsequently the pain returned and she was seen by Dr. Unkauf post-operatively June 18, 1959, July 1, 1959, July 16, 1959, July 29, 1959, September 16, 1959, December 15, 1959, January 18, 1960, February 9, 1960, March 8, 1960 and March 29, 1960, the latter visit being almost one year subsequent to plaintiff's operation.
Dr. Unkauf testified that on the occasion of Mrs. West's last visit she was still wearing the surgical corset he prescribed following the operation. He described the pain caused by a ruptured disc as being of the most severe and painful type. He further stated that to relieve the patient's pain he had placed her on tranquilizers. Dr. Unkauf further testified that Mrs. West's condition was such that when he examined her on March 29, 1960, her complaints of pain were justifiable. His testimony given a year and a day following Mrs. West's operation indicates that she was then experiencing a 25% disability of her back which condition he believed to be permanent. He was of the opinion that if Mrs. West's condition did not improve within a period of 6 to 8 months a fusion of the fourth and fifth lumbar spaces would be necessitated. Dr. Unkauf described a fusion as a surgical procedure wherein bone would be taken from another part of Mrs. West's anatomy and clamped in place across the affected vertebrae to form a solid backing thus preventing the affected vertebrae from rubbing against each other and causing pain. He was of the opinion that the only reason he did not suggest a fusion immediately was because of Mrs. West's inate fear of surgery. In the event of such an operation Mrs. West would be hospitalized for a period of approximately one month three weeks of which would be spent in a device known as a Stryker frame. Post-operatively Mrs. West would be required to wear a surgical corset for a period of 6 to 8 months in order to hold her back rigid to permit the bone fusion to take place. Although he did not state positively and unequivocally that a fusion would ultimately have to be performed his testimony as a whole clearly indicates that predicated upon his knowledge of Mrs. West's condition he was reasonably certain she would have to undergo such additional surgery to obtain further relief. He estimated the cost of such surgery and attending hospital and medical care in the sum of $1,000.00.
On March 30, 1960, Dr. Irving Redler, Orthopedist, examined Mrs. West on behalf of defendants. Dr. Redler's report appearing in the record in substance indicates that he found Mrs. West to be suffering from a 10% disability of her back.
The testimony of both plaintiffs is to the effect that Mrs. West has suffered intense back pain intermittently since the accident. Upon exercising or performing any household chores which require bending, stooping or lifting, the pain is intensified. Substantial exertion produces pain requiring bedrest for several hours. Automobile trips of 200 miles taken for the purpose of visiting her mother necessitated Mrs. West's remaining in bed for two or three days thereafter. She cannot perform such household duties as ironing and heavy washing and neither can she lift her small children when the necessity therefor arises.
In awarding plaintiff the sum of $22,500.00 for injuries sustained in the accident, the learned trial judge relied heavily upon McNulty v. Toye Bros. Yellow Cab Co., La.App., 73 So.2d 23. Our examination of the cited case reveals that the injuries suffered by plaintiff therein were more *860 serious than those experienced by Mrs. West. In the McNulty case, supra, plaintiff underwent an operation for correction of a herniation of the fifth lumbar disc. Four months following the operation she developed an abcess and osteomyelitis as a result of the previous surgery. Plaintiff therein suffered extreme pain for almost two years; she was compelled to wear a corset until the day of the trial and was bedridden for a period of fourteen months several of which were spent in traction. In addition, plaintiff in said cause was hospitalized for a total of approximately seventy-seven days and became so despondent she attempted to take her own life.
The injuries incurred by present plaintiff, however, are not quite as serious as those of plaintiff in the McNulty case hereinabove referred to. Mrs. West, who was 28 years old at the time of her injury, has suffered almost continuously since the accident and will undoubtedly continue to do so. If she undergoes the fusion recommended by Unkauf she will unquestionably experience considerable further anxiety, pain and inconvenience. She is presently suffering a 25% disability of her back which considerably hinders performance of her housework and produces pain upon exertion. This condition will be permanent unless she submits to the operation suggested. It is not shown that the recommended fusion will completely relieve her disability or entirely free her of pain. In view of the nature of Mrs. West's injuries and the aforesaid prognosis we believe that the award for her personal injuries is excessive in the sum of $2,500.00, and accordingly, the judgment in her favor will be reduced to the sum of $20,000.00.
The trial court awarded judgment in favor of plaintiff Leo West for special damages in the aggregate of $2,561.57 including $200.00 depreciation on his automobile and $1,000.00 future medical expense for Mrs. West. Defendants complain that the awards for automobile depreciation and future medical expense were improper and should be disallowed.
With regard to the element of depreciation it appears that defendants' position is well taken. The sole evidence of such alleged depreciation is the uncorroborated testimony of plaintiff himself. Our examination of the record reveals that plaintiff is possessed of no particular skill or experience in estimating the amount of depreciation to a damaged automobile. Plaintiff's testimony on this issue is sheer conjecture. The record reveals it to be speculative, subjective and without confirmation. Under such circumstances the award of said amount must be disallowed as contended by defendants. Bryant v. Travelers Insurance Company, La.App., 88 So. 2d 480.
We find no merit in defendants' contention that the award of $1,000.00 for future medical expense on behalf of Mrs. West should be disallowed on the ground the record does not establish with reasonable certainty that further surgery will be required to alleviate her condition. In this regard learned counsel for defendants relies heavily upon Madison v. Southern Farm Bureau Casualty Ins. Co., La.App., 120 So. 2d 342. The testimony of Dr. Unkauf is clearly to the effect that except for plaintiff's inherent fear of surgery he would have already performed the suggested fusion. Although, as previously stated, he did not unqualifiedly testify such operation would necessarily have to be performed he was definitely of the opinion that if Mrs. West's condition did not improve further it would have to be performed regardless of her reluctance with respect thereto. Dr. Unkauf's testimony further reveals that because of Mrs. West's mental attitude he would prefer to wait an additional six or eight months before deciding upon such an operation but that if called upon to make an immediate prediction he would state that the odds were in favor of her having to submit to a fusion. Opposed thereto is the testimony of Dr. Redler who saw Mrs. West *861 on one occasion and then only for the purpose of evaluating her condition. Conceding Dr. Redler's ability to be equal to that of Dr. Unkauf it is obvious that the testimony of the latter is entitled to more weight considering Dr. Unkauf has had Mrs. West under his treatment and care for more than a year whereas Dr. Redler examined her on only one occasion. We believe the record reveals the necessity for the suggested fusion with reasonable certainty and that the learned trial judge properly allowed recovery for the cost thereof which has been shown to be the sum of $1,000.00.

THIRD PARTY PETITION
The learned trial judge did not assign written reasons for his judgment sustaining the exceptions of no right and no cause of action filed by plaintiff Leo West in opposition to defendants' Third Party Petition and dismissing defendants' said third party demand.
For purposes of the present decision it is unnecessary to consider defendants' argument that Act 30 of 1960 is retrospective in effect by virtue of its remedial nature and therefore the benefits of said statute are available to defendants notwithstanding the case at bar was filed prior to the effective date thereof. Conceding said act to be remedial (purely for argument's sake) and pretermitting all consideration of the procedural question of whether a Third Party Petition may be filed after trial and submission of a cause, the trial court having found plaintiff (defendant in said third party petition) free of negligence, properly dismissed and rejected defendants' third party demand.
For reasons hereinabove set forth it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff Leo West be and the same is hereby amended and revised and judgment rendered herein in favor of plaintiff Leo West and against defendants Murphy Guidry, T. L. James & Company, Inc., and National Surety Corporation in the full sum of Two Thousand Three Hundred Sixty-one and 57/100 ($2,361.57) Dollars with legal interest thereon from date of judicial demand, until paid, and all costs.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff Jeanette Brown West be and the same is hereby amended and revised and judgment rendered herein in favor of plaintiff Jeanette Brown West and against defendants Murphy Guidry, T. L. James & Company, Inc., and National Surety Corporation, in solido, in the full sum of Twenty Thousand and No/100 ($20,000.00) Dollars, with legal interest thereon from date of judicial demand, until paid and all costs.
Amended and affirmed.

APPLICATION FOR REHEARING BY APPELLANT
PER CURIAM.
Defendants herein have filed an application for rehearing alleging, inter alia, that our original opinion contains an apparent inconsistency regarding the award to plaintiff, Mrs. West, for personal injuries. In this regard learned counsel for defendants contends that in allotting Mrs. West the sum of $20,000.00 for the injuries she sustained in the accident, we did so on the finding that her injuries were less serious than those sustained by the plaintiff in McNulty v. Toye Bros. Yellow Cab Co., La. App., 73 So.2d 23, despite the fact that analysis of the $25,425.16 award granted by the trial court in the McNulty case, supra (reduced on appeal to $22,425.16), discloses that of said initial award the sum of $18,000.00 was allocated for past pain and suffering and $2,500.00 granted for future pain and suffering. From the foregoing counsel reasons that the total award for pain and suffering awarded in the McNulty case was, therefore, reduced from $20,500.00 to $17,500.00 or $2,500.00 below the award of $20,000.00 made herein despite our pronouncement to the effect that the *862 injuries received by Mrs. West were not as severe as those sustained in the McNulty case. Predicated upon the foregoing, esteemed counsel further reasons that we, therefore, concluded present plaintiff's injuries to have a monetary value of $2,500.00 less than those in the McNulty case, and, accordingly, the award to Mrs. West should be reduced to $15,000.00.
The McNulty case, supra, was decided eight years ago and we have no quarrel with the award therein made. We believe, however after further careful consideration of the nature and extent of plaintiff's injuries, the recent decisions involving similar injuries and the present tendency to increase awards due to the decreased purchasing power of the dollar, that the award of $20,000.00 made to plaintiff herein is not excessive in that it represents the present fair monetary value of her injuries.
Judgment affirmed.
Rehearing denied.

APPLICATION FOR REHEARING BY APPELLEE, LEO WEST
In his application for rehearing, learned counsel for plaintiff, Leo West, complains that in reducing the award to said plaintiff from the sum of $2,561.57 to $2,361.57, we thereby cast doubt and uncertainty upon our intention to allow recovery of the sum of $200.00 awarded by the trial court as expert fee for plaintiff's witness, Dr. Byron Unkauf, which said sum of $200.00 was included in the trial court's award of $2,561.57.
Reference to our original opinion will disclose that in reducing the judgment awarded plaintiff, Leo West, in the sum of $200.00, we did so in rejection of his claim of said amount for alleged depreciation of his automobile. In this regard we held that plaintiff failed to establish this particular item of damages by competent evidence.
In reducing the judgment in favor of applicant in the sum of $200.00, we made no mention of the trial court's assessment of a fee of $200.00 for the expert witness, Dr. Byron Unkauf, and taxing same as costs. The fee of said expert witness forms no part of the judgment awarded applicant and under the jurisprudence is more properly taxed as costs than awarded as damages. Hudson v. American Employers Insurance Company, La. App., 113 So.2d 340; Langlois v. Continental Insurance Company, La.App., 107 So. 2d 492. We might add also that the fee awarded Dr. Unkauf and taxed as costs herein appears reasonable and we did not intend to change either the amount thereof or deny plaintiff recovery of said sum as costs. We believe said expert witness fee which has been taxed as costs by the trial court is recoverable by applicant under the decretal portion of our original judgment affirming that portion of the trial court's judgment casting defendants for all costs of these proceedings.
Judgment affirmed.
Rehearing denied.