LANDRY, Judge.
Audubon Indemnity Company (Audubon), subrogee of its collision insured, Thompson Foret, appeals the judgment of the trial court dismissing its claim against Liberty Mutual Insurance Co. (Liberty), omnibus insurer of Joseph Patrick Kolwe, for the sum of $1,950.00 paid Foret because of damages to Foret’s automobile sustained in a left turn automobile accident. The trial court rejected plaintiff’s demands upon finding that Foret, the left turning motorist, was guilty of contributory negligence. We affirm.
Subject accident occurred at approximately 10:40 A.M., September 6, 1970, on Louisiana Highway 1, approximately three miles north of Raceland, Louisiana. At the scene of the accident, Highway 1 runs in a northerly-southerly direction and consists of two paved lanes of travel, having a total width of 22 feet. On the day in question, the weather was clear and the highway dry. The accident occurred on a straight stretch of the highway in open country. The speed limit in force was sixty miles per hour.
Just prior to the accident, Foret was driving his Buick automobile northerly along Highway 1, at a speed of approximately 50 miles per hour. Foret, who was being followed closely by three vehicles, slowed the speed of his car to about 20 to 25 miles per hour in anticipation of turning left into the driveway of his residence situated on the west side of the highway. Kolwe, driving northerly at a speed of 60 miles per hour, overtook the line of cars ahead. He trailed the last vehicle at a speed of about 40 miles per hour until he reached a straight stretch of highway. After ascertaining the road ahead was clear, Kolwe entered the passing lane, accelerated to 60 miles per hour and commenced passing the cars ahead. When Kolwe reached a point approximately one car length behind Foret, at which time Kolwe was parallel with the car immediately to the rear of the Foret vehicle, For-et commenced his left turn. The impact occurred in the left or southbound lanes.
In essence Foret testified he was proceeding northerly at about 50 miles per hour in the northbound lane. To his knowledge, he was being followed by two or three vehicles. Intending to turn left into his driveway, he activated his left turn signal when he reached the Rodrigue Service Station situated on the west side of the highway about 700 feet south of his residence. When he reached a point about 300 feet from his driveway, he began reducing his speed and was proceeding at about 20 miles per hour when he commenced the turn into his driveway which was about eight feet wide. Foret also stated that when he activated his turn signal, he looked in his rear view mirror and saw no cars in the passing lane. He conceded that he did not consult his rear view mirror again until just before commencing his turn. At this time, he saw that the car immediately to his rear was slowing down and remaining in the northbound lane, and he assumed that the other following vehicles did likewise. He did not see the Kolwe vehicle in the passing lane as he began his turn. Foret was of the opinion that his vehicle had practically cleared the highway when the impact occurred. He *657 believed that only the rear foot or two of his vehicle was on the roadway at the moment of impact.
Kolwe testified that he had been proceeding northerly at a speed of 60 miles per hour until he came upon the slower moving line of four vehicles led by Foret’s automobile. He followed in line at a reduced speed of about 40 miles per hour, awaiting an opportunity to pass the forward vehicles which were somewhat closely bunched together. Upon reaching a straightaway and ascertaining there were no oncoming vehicles, he accelerated to a speed of 60 miles per hour and began his passing maneuver. Upon entering the passing lane, he saw no left turn signal being exhibited by the Foret vehicle. Without incident, he passed the two vehicles immediately ahead. He then drew abreast of the car immediately following Foret at a distance of about one car length. At this point, when his car was about 20 feet from the rear of the Foret vehicle, Kolwe observed the Foret vehicle “make a dip like to make a left turn, just a dip. When he made that dip his turn signal came on. And then immediately after his turn signal came on he made a left turn.” Kolwe instantly leaned on his horn, applied his brakes, and veered to his left, but could not avoid the collision. He conceded he did not blow his horn until he saw the Foret automobile make its “dip” to the left.
The accident was investigated by Elred Hebert, Jr., State Trooper, who testified that the impact occurred in the southbound lane of travel. He found the entire left side of the Foret vehicle damaged from headlight to taillight. He also noted that the right front and right side of the Kolwe vehicle had come in contact with the left side of the Foret car. Hebert further noted that the Kolwe vehicle left 92 feet of skid marks and came to rest 65 feet from the point of impact after overturning. He also observed that the Foret vehicle came to a stop in the middle of the highway 65 feet from the point of impact.
The cases in our jurisprudence are legion to the effect that a high degree of care is placed upon a left turning motorist. See, for example, Magee v. Yates, La.App., 219 So.2d 299, and Nugent v. Glover, La. App., 205 So.2d 129. A left turn is one of the most hazardous maneuvers a motorist can perform consequently it is incumbent upon a motorist to ascertain that such a move can be accomplished in reasonable safety. LA-R.S. 32:104(A). Additionally, a left turning driver is required to signal his intention to turn and yield the right of way to oncoming and overtaking vehicles lawfully using the highway. Husser v. Bo-galusa Coca Cola Bottling Company, La. App., 215 So.2d 921, and authorities therein cited.
Whether or not a left turning motorist discharges the burden of care incumbent upon him is a matter to be determined in the light of the circumstances of each individual case.
The trial court found Foret guilty of contributory negligence in failing to see Kolwe’s vehicle in the passing lane when Foret looked to his rear immediately before commencing his turn. In this conclusion, we concur.
Appellant’s chief contention appears to be that Foret was not negligent in making his left turn because Kolwe had not yet entered the passing lane when Foret looked immediately before making his turn. The physical facts and testimony do not bear out this contention.
If Kolwe were out of sight in the northbound lane when Foret commenced his left turn, the accident could not have happened as it did. Kolwe would have been such a distance to the rear of Foret that Foret would possibly have accomplished his left turn without mishap. If Kolwe was still in the northbound lane when Foret began his turn, at least the front portion of the Foret vehicle would have cleared the highway before the collision. The physical facts show, however, that the impact occurred in the southbound or passing lane, and that *658 there was contact between the left side of the Foret car and the right front and side of the Kolwe vehicle. The conclusion is inescapable that the accident occurred as related by Kolwe.
Foret’s negligence consisted in failing to maintain the degree of lookout required of a left turning motorist. By his own admission, Foret looked when about 700 feet from his driveway, and did not look again until immediately before commencing his turn. In failing to see Kolwe’s vehicle in the passing lane when Foret began his turn, Foret was negligent in failing to see what he should have seen. To look and not see what is to be seen is equivalent to not looking at all. West v. T. L. James & Company, La.App., 142 So. 2d 853.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.