JANVIER, Judge.
At about two o’clock in the afternoon, on September 4, 1956, Mrs. Viola Dunham Mullen, wife of Charles Edward Mullen, while a passenger in a taxicab of Checker Cab Company of New Orleans, sustained injuries when the taxicab was brought to-a sudden stop by its operator in order to avoid striking a truck owned by David R. Campbell which, at an intersection, was crossing the roadway in front of the taxicab. The accident occurred at the intersection of Fern Street and South Claiborne Avenue. South Claiborne is a very wide thoroughfare, the two roadways being separated by an extremely wide neutral ground. The Checker Cab was on its way in a downtown direction and the truck of Campbell was crossing the neutral ground in a direction towards the Mississippi River.
Campbell had secured a policy of liability insurance from Pacific Indemnity Company, and Mr. and Mrs. Mullen *138 brought this suit against Checker Cab Company of New Orleans and Pacific Indemnity Company, she praying for solidary judgment against the said defendants in the sum of $7,000, and he praying for solidary judgment against them in the sum of $611.84, alleging that to be the cost of medical, hospital and other expenses and losses made necessary by and resulting from the injuries of Mrs. Mullen.
Checker Cab Company answered, admitting the occurrence of the accident, but alleging that it had been caused solely by negligence of the driver of the Campbell truck in emerging from the protection which had been afforded his truck by the neutral ground of South Claiborne Avenue and proceeding directly into the path of the taxicab, causing the driver of the taxicab to bring it to a sudden violent stop in order to avoid striking the truck.
Pacific Indemnity Company answered, denying that the driver of the Campbell truck had in any way been at fault, and averring that the cause of the accident was the negligence of the driver of the cab in failing to keep a proper lookout, in traveling at an excessive rate of speed, in failing to have the cab under control, and in failing to accord to the truck the right of way to which it was entitled since it is alleged that it had preempted the intersection.
There was judgment in favor of Mrs. Mullen against Pacific Indemnity Company in the sum of $2,000 and in favor of Mr. Mullen in the sum of $611.84. There was further judgment dismissing the suit as against Checker Cab Company of New Orleans. Pacific Indemnity Company has appealed devolutively and suspensively, and plaintiffs have also appealed, contending that the amount awarded Mrs. Mullen is inadequate and that they should also have judgment against Checker Cab Company of New Orleans.
The record leaves no doubt whatever as to the negligence of the driver of the truck. In fact, counsel for Pacific Indemnity Company, in their brief, admit that the driver was negligent in that he did not stop the truck before leaving the neutral ground, and in that, when he entered the roadway in front of the oncoming taxicab, he did not look to his right and did not know that the cab was approaching and in fact did not see it until he heard the application of its brakes.
Erwin P. Albrecht, the driver of the taxicab, says that he was operating the cab in a downtown direction on South Claiborne Avenue at a speed of 25 or 30 miles an hour and that when he reached a point about 80 or 90 feet from the intersection, he saw the truck which was coming into the wide neutral ground of the intersection at a speed of about 15 or 20 miles an hour; that when he was about 25 or 30 feet away he realized that the driver of the truck was not going to bring it to a stop, and that he then applied his brakes and “cut with the truck”, meaning that he swerved to his right into the direction in which the truck was going.
We find no negligence in the driver of the taxicab. It appears that his cab skidded only about eight feet after he applied the brakes and this makes it obvious that his speed could not have been excessive. The neutral ground of South Claiborne is very wide and he had every reason to believe that the driver of the truck would bring it to a stop before emerging into the roadway in front of the taxicab.
We have not overlooked the fact that Mrs. Mullen testified that just before the cab was brought to a sudden stop, or while it was being stopped, Albrecht, the driver of the cab, made a remark, the exact wording of which she could not remember with certainty. She said it was “something” to this effect: “Look at that nut coming.” Counsel for plaintiffs and counsel for the other defendant argue that this indicates that the driver, after realizing that the truck would not be brought to a stop, had sufficient time to bring his taxicab to a *139 gradual stop. When the taxicab driver made this remark, he must have applied his brakes at about the same time, and it is obvious that the violent application was necessary since it is clear that if he had not brought the taxicab to a sudden stop, it would have crashed into the side of the truck.
Much is made over the fact by counsel for plaintiffs and by counsel for Pacific Indemnity Company that, when the truck continued on it was in Fern Street and the driver of the cab, instead of stopping to see whether Mrs. Mullen had been seriously injured, continued for several blocks behind the truck until he could ascertain its license number. The driver of the truck admits that he drove away without waiting but he explains this action by saying that when he saw that there had been no contact between the taxicab and his truck, he saw no reason to stop and investigate further, not knowing that Mrs. Mullen had been injured.
We do not think it can be said that the driver of the taxicab was at fault in continuing to follow the truck in an effort to ascertain its license number. Of course, if the injuries of Mrs. Mullen were aggravated by being jolted around in the cab during those three or four blocks, liability for her injuries would include the aggravation thereof.
After a review of the entire record, we see no reason to reverse the finding of the District Court which was to the effect that the driver of the taxicab was not at fault.
When we come to consider the quantum, we find that every item claimed by Mr. Mullen was proven correct by him. Thus the judgment in his favor for $611.84 was correct.
The accident occurred on September 4, 1956. Mrs. Mullen was taken to the Charity Hospital and from that hospital was taken to the Mercy Hospital and was required to remain there for ten days. Dr. Christopher F. Bellone, who treated her, had X-ray photographs made and from; them he determined that “she had no apparent fractures or bony pathology.” He found that she did have “contusions, hema-toma of the right hip, with contusions of the anterior chest wall, contusions of the muscles of the right thigh, * * *.” He also said that the most important of her injuries was “a severe lumbosacral strain.” He was questioned concerning a report which he had made on September 21 and in which he had stated that the injuries were not serious and might not leave any permanent disability, but that “they were nevertheless painful and disabling to her.” He stated that at that time he anticipated complete recovery. He also stated in his report that, as of January 15, 1957, “her recovery seems to have been complete, and there are no residual effects. She has been discharged as healed.” In spite of that report it appears that she did remain under treatment by him for several months.
Dr. O. L. Pollingue, an orthopedist specialist, was called in by Dr. Bellone. Dr. Pollingue stated that he had seen Mrs. Mullen in the Mercy Hospital and he found the contusions and bruises referred to by Dr. Bellone, and he says: “I made a diagnosis of lumbo sacral strain, and ordered a lumbo sacral corset.”
After being discharged from the hospital Mrs. Mullen visited Dr. Pollingue’s office on September 28th and he saw her several times until July 24, 1957. He referred to her injury as causing “at least discomfort” and said that such discomforts usually continue for two or three and occasionally four months following such an accident. At this point the District Judge made a note of the fact that the doctor had used the word “discomfort” and stated that it seemed to be the custom of the medical profession to use the word “discomfort” instead of pain. Dr. Pollingue stated that Mrs. Mullen had been discharged by him on December 14, 1956, but he followed this with a statement to the effect that there had been subsequent visits.
*140 In view of all this medical testimony, in spite of the fact that Mrs. Mullen herself seems to think that she was very seriously injured, we believe that the award was adequate and should be neither increased nor reduced.
Accordingly, the judgment appealed from is affirmed. Under all the circumstances, we feel that all costs should be borne by Pacific Indemnity Company.
Affirmed.