116 So.2d 130 (1959)
Mrs. Peter G. HUMPHRIES, Plaintiff-Appellee,
v.
DELTA FIRE & CASUALTY COMPANY, Defendant-Appellant.
No. 4905.
Court of Appeal of Louisiana, First Circuit.
November 16, 1959.
Watson, Blanche, Wilson, Posner & Thibaut, David W. Robinson, Baton Rouge, for appellant.
Arnold J. Gibbs, Joel B. Dickinson, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, TATE and CULPEPPER, Judges.
*131 TATE, Judge.
The plaintiff, Mrs. Humphries, sues her husband's liability insurer to recover damages for personal injuries sustained while she was a passenger in a vehicle driven by him. His negligence (in ramming into the rear of a line of cars stopped for a red light) is no longer contested. By this appeal defendant-appellant questions solely the amount of the damages awarded. (The request in the brief of the plaintiff-appellee that the award be increased cannot be considered, in the absence of an appeal or answer to the appeal by her. Accounts Supervision Co. v. Atley, La.App. 1 Cir., 89 So.2d 508.)
Mrs. Humphries was thrown forward by the impact, so that her head struck the sun visor and mirror with sufficient force to break the latter, and so that her knees struck the dashboard and were severely bruised. Initially, her attending physician felt that she would make a relatively quick recovery from the moderately severe personal injuries suffered by her. But her complaints persisted, and in March of 1957 she was referred to a psychiatrist. The latter found that Mrs. Humphries was suffering from a conversion neurosis precipitated by the trauma of the accident, and he placed her under psychiatric treatment.
The trial court awarded Mrs. Humphries (a) the sum of $2,500 for certain personal injuries specified by the petition, and (b) the further sum of $12,000 for the traumatic neurosis "which was occasioned or precipitated by the accident." Defendant-appellant's contentions that these awards should be reduced will be separately discussed below.
Before doing so, however, it is not inappropriate that we refer to the general principles applicable to review of awards for personal injuries, which we summarized in Higginbotham v. Frazier, La.App., 92 So.2d 89 at page 93 as follows: "The award of damages for personal injuries is of necessity somewhat arbitrary and varies greatly with the facts and circumstances of each case; it is largely left to the discretion of the trial court, the award by which should ordinarily not be disturbed; LSA-Civil Code, Article 1934(3); Franklin v. Arkansas Fuel Oil Company, 218 La. 987, 51 So. 2d 600; McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21. However, this is somewhat qualified by a doctrine generally announced similarly to the statement found in Thomas v. Great American Indemnity Company, La.App. 2 Cir., 83 So.2d 485, at page 487 as: `Each case is to be determined upon its own facts, with the desire, however, for the attainment of some degree of uniformity in cases involving similar injuries and disabilities.'"
1. Award for Physical Injuries.
The sum of $2,500 was awarded for the following physical injuries specified by the petition, and the attendant pain and suffering:
(a) A cerebral concussion, which produced continuously severe headaches for over a week following the accident, and severe headaches intermittently thereafter (which continued up to the trial, but the manifestations of which after the first several months are attributable to the neurosis, see discussion below, rather than to the concussion); (b) abrasions about the left half of the forehead, which a neighbor described as "horrible" looking, but which cleared up in approximately two weeks; (c) a hemorrhage about the bridge of the nose, producing a hematoma (swelling) about the size of a silver dollar, but which likewise cleared after two weeks; (d) bruises of both knees, which persisted for at least three months after the accident; and (e) a moderately severe coccygodynia, (that is, a very painful condition of the tailbone), which persisted approximately two months, but with continued complaints of pain by the plaintiff thereafter (most of which latter are attributable to her neurosis rather than to any physical cause); and (f) shock at the time of the accident, when Mrs. Humphries, after momentarily blacking *132 out was found to be screaming and shocked, and was dazed for a period of hours after the accident.
As a result of the injuries, Mrs. Humphries spent most of her time in bed at home for five days following the accident, and rested at home in bed a great deal for the first month after the accident. Under her physician's instructions, she took regular treatments by a physical therapist for four months after the accident, and intermittently during the next three months thereafter.
Undoubtedly Mrs. Humphries suffered greater pain from these physical injuries than most persons would have because of her underlying emotional state.
We are unable to say that the award made by the trial court for the above listed physical injuries and the attendant pain and suffering and shock is excessive. It is in line with such awards as those made in Jenkins v. Audubon Ins. Co., La.App. 1 Cir., 110 So.2d 221, Mullen v. Checker Cab Co., La.App. Orl., 110 So.2d 137, and Jackson v. Firemen's Insurance Company, La. App. 1 Cir., 86 So.2d 220. The plaintiff also suffered neck pains from certain whiplash injuries for which recovery was not allowed (see minute entry, May 19, 1959) because apparently an objection to any evidence concerning same was sustained on the ground that such physical injury was not specified by the petition.
(2) Award for "traumatic neurosis".
Plaintiff was awarded $12,000 for a "traumatic neurosis" precipitated by the accident, and the resultant pain and suffering.
At this point it should be remarked that, according to the testimony of the psychiatrist herein, the term "traumatic neurosis" (sometimes, "post-traumatic neurosis") is no longer in favored medical usage. The term is descriptive of the causation of a neurosis triggered or precipitated by a trauma. Psychiatrists now prefer, as more precisely descriptive, to label a neurosis (whether or not precipitated by a trauma) according to its symptoms: a conversion, an anxiety, and an obsession neurosis, for instance.
In the present case it is uncontradicted that as a result of the accident the plaintiff is suffering from a conversion neurosis precipitated by the accident in question. A conversion neurosis is one in which the latent anxieties or tension or insecurities in a person's mental life are converted into physical symptoms of pain, suffering, and disability as real as if physically caused. It is, of course, uncontroverted that recovery is allowable for the pain, suffering, and other effects resulting from a neurosis precipitated or caused to become manifest by a tort, just as it is for those produced by a tort-caused physical injury or for a tort-produced aggravation or manifestation of a formerly latent physical condition or predisposition.
In Mrs. Humphries' case, after ruling out physical or organic causes, her physicians concluded that the recurrent intense pain she suffers in the neck and back resulted from a conversion neurosis. The pain causes objective symptoms of muscle spasm, observable even under hypnosis. Furthermore, the objective manifestations of her conditionher rigid and tense body posture, her shaky and tremulous limbs and hands, her face quivering with tics and twitchescould not, under the medical testimony before us, be simulated and voluntarily produced; and these symptoms persisted even under deep hypnosis, when it is not possible to simulate them. She walks "sidewise", as if in great pain. She complains of frequent severe and incapacitating headaches.
Furthermore, the medical and lay testimony indicates that she developed an entirely changed personality as a result of the neurosis.
Before the accident, she was a jolly, talkative and energetic person, active in church and school work, who enjoyed dancing *133 and parties and frequent motor excursions with her husband and daughter. As a result of the neurosis, she has become secluded and withdrawn and is constantly depressed. She rarely leaves her house and spends much of her time there resting. Her demeanor and deportment are obviously nervous and withdrawn and she is easily upset and startled by noises or outside activities. She does not sleep well but suffers pain at night.
Formerly, she was devoted to her child and took her to music and swimming lessons and to church and neighborhood parties. Since the accident, because she is afraid of the constantly recurring pain and headaches which are triggered by the slightest worry and anxiety, Mrs. Humphries feels that physically she is unable to take her daughter to outings or lessons. The relationships between Mrs. Humphries and her daughter and her husband have been much disturbed by her condition.
The psychiatrist's diagnosis that the accident precipitated the neurosis (as confirmed by her history and by her reactions in statements while under deep hypnosis) is uncontradicted. Mrs. Humphries was still under weekly psychiatric treatment (at $25 per treatment) almost two years after the accident, with the physician's estimate that she would need at least a year to a year and a half longer in order to adjust to her condition. (The cost of the first nine months of this treatment exceeded $1,000, and she has continued to undergo this expensive regular psychiatric consultation and treatment by hypno-therapy to the date of the trial; and, according to the briefs, thereafter. Such medical expense, being an expense of the community, is of course not recoverable by Mrs. Humphries individually.)
Mrs. Humphries' condition was somewhat alleviated by the weekly psychiatric treatment she was undergoing at the trial over two years after the accident, but the psychiatrist estimated that it would take at least from one to one and one-half years of further treatment before she would be able to make the maximum recovery.
The defendant's able counsel, pointing out Dr. Magruder's statement that a conversion neurosis could be produced by any psychic trauma, argues that (since Dr. Magruder also testified that a patient usually becomes aware of her symptoms within a matter of a few days or a few weeks following the accident) the present accident was not the cause of Mrs. Humphries' conversion neurosis because she stated that her "tenseness" and "extreme nervousness" did not become noticeable until the fall of 1956, that is several months after the accident of May, 1956.
In the first place, Dr. Magruder based his diagnosis of causal relationship between Mrs. Humphries's present condition and the accident upon her entire history, the truthfulness of which is corroborated by the lay witnesses. In the second place, although the very apparent tenseness with which Mrs. Humphries held herself and her extreme nervousness may not have manifested themselves until several months following the accident, we do not understand Dr. Magruder's testimony to be that the conversion neurosis springs full-blown into being within a few days or a few weeks of the trauma. Mrs. Humphries' immediate and thereafter constant preoccupation with her physical injuries and the persistency of the pain they caused her long beyond that attributable to physical causes; her nervousness and anxiety over her condition, increasing as the months went by; her inability to sleep; her increasing withdrawal from activities away from her sickbed; all are symptoms of her neurosis and all commenced with the accident and continued in unbroken progression thereafter. We think that the lay and medical testimony unmistakably reveals that the present accident triggered Mrs. Humphries' conversion neurosis.
For the intense physical pain Mrs. Humphries has suffered and will (under the uncontradicted medical prognosis) continue *134 to suffer, and for the disruption of her personality and of her family and social life, we do not think the award of $12,000 to be excessive. See Hudson v. American Employers Ins. Co., La.App. 2 Cir., 113 So.2d 340; Kirby v. Great American Indemnity Co., La.App. 1 Cir., 98 So.2d 277; Girouard v. Houston Fire & Cas. Ins. Co., La.App. 1 Cir., 85 So.2d 664; Merchant v. Montgomery Ward & Co., La.App. 1 Cir., 83 So.2d 920. (The smaller award for the tort-caused increase in emotional instability in Le Jeune v. U. S. Fidelity & Guaranty Co., La.App. 1 Cir., 105 So.2d 327, cited to us by defendant, concerned a situation where a noticeably nervous condition predated the accident, although it was aggravated somewhat by it, but where the symptoms were not as severely painful and as completely disruptive of the claimant's family and social and mental life as in the present instance.)
For the foregoing reasons, the judgment appealed from is affirmed.
Affirmed.