LOTTINGER, Judge.
This is a tort action arising out of an automobile accident which occurred in the City of Baton Rouge in the morning of October 9, 1961. As liability is now admitted, the sole question before us is that of quantum. The Trial Judge awarded the plaintiff the sum of $3,500.00 for personal injuries together with the sum of $928.83 for special damages from which judgment he has appealed.
The Trial Judge rendered written reasons for judgment, part of which read as follows:
“Plaintiff has a history of considerable pre-existing back disability and was retired from the U. S. Air Force due to his back disability. Plaintiff has had previous surgery consisting of laminectomies at various levels in the lumbar spine with excision of a disc at L-2, L-3 interspace on the right, and also at L-4, L-5. In addition, he developed osteomyelitis in L-l, L-2 in-terspace, secondary to excision of the *534 herniated intervertebral disc at L-2, and as a result has had a fusion of the first and second lumbar vertebrae. (Tr. 39). The first injury to plaintiff’s back was in October or November of 1944 (Tr 77). The back was later re-injured in the service. (Tr. 78). In October 1956 while hospitalized from amebiosis, plaintiff was examined and the defects of the L-2, L-3 level of the spine were discovered. Surgery was performed in February 1957 (Tr 79). Subsequently another operation was performed and then herniated disc at the L-4, L-5 Level was discovered. Upon being transferred to another hospital, the case was diagnosed as an inflamation or osteomyelitis of the spine. Plaintiff continued to have minor spasms (Tr 81). It was at this point that plaintiff visited Dr. J. Willard Dowell, orthopedic surgeon. Dr. Dowell testified that he first examined plaintiff on January 12, 1960, some 21 months prior to the accident in question. At the time plaintiff was wearing a long back brace, (Tr 29), and was complaining of a severe back pain. Dr. Dowell examined plaintiff and had x-rays taken of the lumbosacral spine. Dr. Dowell diagnosed the difficulty as resulting from tenderness over the lumbar spine (Tr 29). Dr, Dowell did not see plaintiff again until October 9, 1961, the date of the accident. During the treatment immediately following the accident, plaintiff was placed in traction, but had difficulty tolerating it. The traction was later removed. Plaintiff was placed on muscle relaxants, and given medicine for the relief of pain. He developed some gastro-intestinal symp-tims in the early part of the treatment, and was referred to Dr. C. B. Luikart, Jr., a specialist in internal medicine. Plaintiff’s back pain decreased during his hospital stay, but his progress was quite slow. Dr. Dowell testified that during plaintiff’s hospital stay from October 9 to October 29, 1961, he suffered much pain. (Tr. 31). Dr. Dowell re-examined plaintiff on May 11, 1962, a few days prior to the trial and found that he was walking at that, time rather stiffly. Examination at that time revealed that he had tenderness-over his back muscles at the lumbar level and that he had muscle spasm (Tr. 33). Dr. Dowell was unable to testify whether plaintiff’s condition had improved between the date of the first examination in January 1960, and the-date of the examination made immediately after the accident in October 1961. (Tr. 30). However, the medical opinion was to the effect that every time Dr. Dowell had examined plaintiff he was disabled (Tr. 33). Dr. Dowell! could not give a prognosis as to plaintiff’s recovery. (Tr. 33).
“Dr. Dowell testified that when he first saw plaintiff on January 12, I960, he had a ‘severe disability.’ (Tr 37).. Dr. Dowell testified that, assuming-plaintiff had been injured in the- accident, he was of the opinion that plaintiff had a ‘reinjury’ (Tr 36) ; that although he could not state to what extent he was reinjured, yet he was disabled as far as any useful activity was. concerned (Tr 37). The medical testimony did not show how much of the-present condition was due to the injury received in the accident (Tr 37), but there was testimony that the pre-exist-ing condition was ‘aggravated by this-accident’ (Tr 37). Dr. Dowell further-testified that the disability was severe in January 1960, and although he didn’t examine plaintiff again until the date of the accident, yet it was possible for plaintiff to have made a recovery from the severe disability as it was in January 1960 (Tr 38). The accident produced no fracture or dislocation-(Tr 42).
“Plaintiff was examined by Dr. Dowell on nine separate occasions after the accident. The medical testimony was to the effect that a person in the condi- *535 tion of plaintiff was very susceptible to injury (Tr 40). Dr. Dowell further testified that the disability in January 1960 was permanent; that his accident increased disability, but could not state whether the aggravation would be permanent or temporary (Tr 52). At the time of the trial the disability was total, and plaintiff was unable to work and carry on useful activities.
“The medical experts further testified that plaintiff would require future medical examinations and drugs indefinitely. The medical examinations will have to be made every month or two, or if the condition improved every three to six-months (Tr 48), however, even if plaintiff had not had the accident there still would have been future medical examinations, but these would have been at longer intervals than will now be required (Tr 50). Plaintiff is still under medical treatment, and continues to have pain.
“Dr. Luikart, specialist in internal medicine, testified that he had treated plaintiff on October 14, 1961 for abdominal pain caused by an acute gastritis and esophagitis (inflamation of the stomach and esophagus). This condition was casually connected with the accident occurring on October 9, 1961 and produced considerable pain. Dr. Luikart testified that although the pain was considerable when he first examined the patient, that within a day or two plaintiff responded to treatment and the pain was eased considerably.
“The plaintiff remained in the hospital from October 9 until October 28, 1961, returned home and remained in bed for a week to a week and a half, was in a wheelchair for one month, and since the accident has been wearing a brace. Plaintiff will continue to undergo pain and muscle" spasm, ánd will have to sleep on a board for an indefinite time. However, plaintiff had worn a brace be■fore the accident.
“Defendant’s counsel in their brief has very honestly and gallantly cited the case of Rachel vs. Bankers and Shippers Insurance Company, 146 So.2d 426, as follows:
“ 'We think that the plaintiff is entitled to recover for this additional medical expense and the additional pain, suffering, and discomfort to be endured by reason of the extraction of the remainder of his teeth and by reason of his being required to wear full dentures. However, in making-such award, we will take into consideration the poor condition of the plaintiff’s teeth prior to the accident.
“ '(3) A tortfeasor must take his victim as he finds him. The tort-feasor is responsible for all the natural and responsible consequences of his wrong, even though the consequences of the tort are made much more serious or harmful by reason of a pre-existing physical defect or weakness of the injured person.
“ ‘See: Shaffer v. Southern Bell Tel. & Tel. Co., 184 La. 158, 165 So. 651; Humphries v. Delta Fire & Cas. Co., La.App. 1 Cir., 116 So.2d 130; Warren v. Fidelity Mut. Ins. Co., La.App. 1 Cir., 99 So.2d 382; Trascher v. Eagle Indemnity Co., La.App.Orl. 48 So.2d 695. See also; 25 C.J.S. Damages, §§ 18, 21, 25 pp. 472, 479, 487.’
“Dr. J. Willard Dowell, orthopedic surgeon, quoted extensively in this judgment, testified that he treated plaintiff in January 1960, but that he, Dr. Dowell, could not say what percent of his disability was due to this accident. “Plaintiff has proven special damages as follows: Car damage, $113.83; Dr. Dowell, $175.00 ($35.00 of which amount was for future medical expenses covered in the pleadings of this suit and established on the trial of this case), Dr. Luikart, $35.00; Our Lady *536 of the Lake Hospital, $605.00, totaling $928.83 for special damages.
“If plaintiff’s attending physician was unable to testify, what percentage of plaintiff’s injury is due to this accident then the court has a hard task of arbitrarily fixing the amount of plaintiff’s injury in dollars and cents. All the testimony considered, the court feels that an award of $3,500.00 for plaintiff’s injury would meet the ends of justice and be in accordance with the testimony in this record.
“For the reasons assigned there should be judgment in favor of plaintiff and against defendant, Edward J. Haygood and American Indemnity Company, insólido, in the sum of $3,500.00; and for special damages in the amount of $928.83 as above itemized, together with 5 percent interest from date of judicial demand until paid.
“There should be further judgment in favor of plaintiff and against defendants insólido for expert witness fees of Dr. J. Willard Dowell and Dr. Carl Bryan Luikart, Jr. in the sum of $100.00 each and taxed as costs. Defendants to pay all costs of this suit. The Court will sign a formal judgment in accordance with the written opinion herein rendered.”
The above quoted findings are amply substantiated by the record; however, they do not take into consideration the testimony with respect to plaintiff’s physical condition as of the time of the accident on October 9, 1961. The record reflects, without contradiction, that plaintiff was examined by Dr. Dowell on January 12, 1960, and was retired from the service in May of 1960. He was not seen by a doctor again until the day of the accident when he was treated by Dr. Dowell. This being the case, it is obvious that there is no medical testimony available respecting the plaintiff’s condition in the months intervening from May, 1960, until the date of the accident. In order to ascertain his condition, we have no alternative but to examine the lay testimony which was introduced with respect thereto.
The plaintiff testified without contradiction that he was in bad shape physically when he retired from Walter Reed Hospital to Baton Rouge in May of 1960. At this time he wore a full back brace, motion was painful and his physical activities were restricted to supervising of the cleaning of his yard by his children and directing handymen who worked about his house. He testified that in July of 1960, he chipped a few bricks without suffering muscular spasm and by August of that year he was doing light carpentry work about his home. By December of 1960, he could work for half a day fixing things around the house. By Christmas of 1960, he ceased using his brace and by the following Spring had spaded his flower bed, sanded floors and done full days’ work around his home. In July of 1961, he drove his automobile from Baton Rouge to Houston, Texas, without rest. He went swimming and felt that he was progressing well. By the Fall of 1961 he planned on seeking employment as a bookkeeper in which he had been trained earlier. He worked on a substitute basis as a motel manager, the duties of which he found he could perform without discomfort. Plaintiff’s testimony is corroborated by that of his wife.
Oscar Risher, a carpenter of Denham Springs, Louisiana, testified that he worked on and off for a period of two years remodeling the plaintiff’s home. This witness testified that the plaintiff’s ability to do physical work was very limited when he started but that his physical condition gradually improved until he virtually took over the work that Risher was doing and finished it himself. The work referred to involved adding on a room and the handling of lumber, roofing, decking and manufacturing trim.
Ronald Jackson, a neighbor of plaintiff, testified that he noticed the plaintiff's physical impairment when he first moved into the neighborhood, his improvement as time *537 went by and how he regained his ability to the extent that he could climb a ladder and install sheet-rock.
Edward Norton, another neighbor, testified of visiting plaintiff several times a week and how he found him to be in serious physical condition at first and how he gradually improved until at the time of the accident, he was using a shovel, pushing a wheel-barrow, doing carpentry work, walking erect and being in general “pretty active”.
Mrs. Clara Simoneaux Roucher, another neighbor of plaintiff, testified that she saw him practically every day and saw him doing construction work on the home. In her opinion, he had “improved wonderfully” at the time of the accident.
The defendant introduced the testimony of a Mr. Lawrence W. Hall, private investigator, who testified that he had observed the plaintiff some IS or 20 times in the several months preceding trial during which time he saw him driving his station wagon to a grocery store, the doctor’s office and other places. He described him as having, during this period, “only a slight limp”.
We consider the Trial Judge’s award for physical injuries insufficient in that he did not take into consideration the remarkable recovery that the plaintiff had made as of the date of the accident at which time he was no longer the disabled man that he had been when seen by Dr. Dowell in January of 1960, and when he returned from the service in May of 1960. As a result of his improvement, we find that the effect of the injuries received in the accident was to again disable him and, consequently, his award for personal injuries should take into consideration his pain and suffering together with his personal disability. All things concerned, we believe that an award of $8,000.00 for physical injuries to be just.
Dr. Dowell testified that the plaintiff would have to undergo periodic examiná-tions indefinitely. He defined periodic as being from a month or two to possibly every three to six months if he improved. He also testified that he had prescribed medication in the form of a muscle relaxant, Librium, and a drug called Synirin, a salicilate with a small dose of barbituate in it which he would have to take from three to four times a day.
The plaintiff was, at the time of trial, 43 years of age, with a life expectancy of 26.22 years. Under the circumstances, we- think he is entitled for future medical expenses which, considering the testimony of Dr. Dowell referred to above, we hereby fix at the sum of $1,000.00.
For the reasons assigned, the award of $3,500.00 for injuries appealed from is hereby increased to the sum of $8,000.00, and it is further ordered, adjudged and decreed, that the plaintiff be awarded the sum of $1,000.00 for future medical expenses. In all other respects, the judgment appealed from is affirmed.
Judgment amended and affirmed.