LABORDE, Judge.
This personal injury suit arises out of a vehicular accident. Defendant-appellant, The Home Indemnity Company appeals from an adverse judgment in favor of James D. Litton, plaintiff-appellee. We affirm. We find no manifest error in the factual determinations of the trial judge, nor do we find an abuse of discretion by the trial judge in the damages awarded.
The facts are uncontroverted. On September 15, 1978, Litton was operating his 1978 Honda motorcycle in a southerly direction on U.S. Highway # 71, near Camp-ti, Natchitoches Parish, Louisiana. He was struck from the rear by a 1977 International tractor-trailer truck owned by Victor Simons, driven by Carl D. Simons, and insured by The Home Indemnity Company.
The trial court found the defendant negligent an_issue not seriously contested at trial. No appeal is taken on the issue of liability. The trial court’s award of $4,806.55 for special damages is also not in question on appeal.
Appellants make two (2) specifications of error:
(1) the plaintiff did not meet his burden of proof that he had sustained a permanently disabling injury, and
(2) the award of $60,000 to plaintiff for general damages was clearly wrong.
Addressing ourselves to specification of error (1), we have reviewed the record in light of the guidelines set by our Supreme Court in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971) and conclude that plaintiff has sustained his burden of proof.
In Jordan our Supreme Court held:
In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter’s fault; but proof need be only by a preponderance of the evidence, not by some artificially created greater standard. This burden of proof may be met by either direct or circumstantial evidence.
In describing this burden of proof, the courts sometimes speak of proof to a “reasonable certainty” or to a “legal certainty”; or of proof by evidence which is of “greater weight” or “more convincing” than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant’s tort with “a fair amount of certainty”. Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.
Jordan was cited approvingly by this court in the recent case of Moity v. Petty-Ray Geophysical, Inc., 369 So.2d 225 (La.App. 3rd Cir. 1979) where the court stated:
In negligence cases, proof by either direct or circumstantial evidence is sufficient to constitute a “preponderance of the evidence” when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). Circumstantial evidence need not negate all other possible causes of injuries as long as the circum *543 stantial proof excludes other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
 It is a well-known principle that much weight is to be afforded to the trial court’s finding of fact, particularly where there is a conflict in the evidence taken at trial and the trial court’s judgment will not be reversed if the evidence of the successful party when considered by itself is sufficient to sustain the judgment. Gaudet v. Berry, 307 So.2d 767 (La.App. 1st Cir. 1975). The record in this case indicates that no manifest error was committed by the trial court. The evidence offered by the plaintiff was sufficient to sustain his burden of proof and the trial judge was correct in finding liability on behalf of the defendants.
In accordance with the above, our review of the record reveals that plaintiff adequately sustained his burden of proof.
Turning now to specification of error (2), we note that the trial judge, in his written reasons for judgment, found that:
“Plaintiff was injured while riding a motorcycle when struck by the defendant’s vehicle on U.S. Highway 71. Defendants do not seriously contest liability and candidly state in their brief that had the insured and the driver been present at the trial liability would have been stipulated. The Court, therefore, finds the defendants liable without having to reiterate the facts and make findings regarding liability.
The sole issue is quantum. Following the accident, the plaintiff was taken to a hospital in Coushatta and from there to Bossier City General Hospital. His injuries were: a cerebral contusion, probable skull fracture, and the usual bruises, contusions and abrasions. The skull fracture caused leakage of spinal fluid from both ears. The plaintiff quickly recovered physically; losing thirteen (13) actual work days of employment but returned to work within three (3) weeks. Plaintiff also suffered a broken tooth.
The most impressive item of damage caused by the vehicle injury is the complete personality change of the plaintiff. Testifying as lay witnesses were plaintiff’s great uncle; a school teach; [sic] a former high school coach; and several neighbors. Two (2) clinical psychologists examined and diagnosed plaintiff’s condition as being one of depression, associated with and caused by cerebral impairment as a direct result of the motorcycle accident. Whereas, the plaintiff, previous to the accident had been a healthy, energetic, outgoing and warm individual, at the trial of this case, his condition and personality was described as moody, depressed, withdrawn, irritable and incapable of doing the quality construction work that he was doing previous to the injury. The Court finds here there is great evidence of mental and emotional disability. The plaintiff cannot now follow simple instructions; he has loss of memory, and is not able to perform carpentry work, but acts now more as a helper and is assigned simpler tasks because of his incapability of doing the jobs required of highly trained and skilled carpenters.
In view of the injuries, the Court makes the following awards:
Dr. Warren $ 110.00
Bossier General Hospital 1,067.55
Natchitoches Parish Hospital (ambulance service) 124.00
Southwest Psychological Services 740.00
Physical damage to motorcycle 1,845.00
Loss of wages 780.00
Travel to and from doctor in Shreveport (5 trips x 120 miles, 700 miles x $.20) 140.00
$4,806.55
For general damages, pain, suffering (past, present, future), serious personality changes resulting from brain damage sixty thousand ($60,000.00) dollars.”
*544 Civil Code Art. 1934 provides that, in the assessment of general damages, “much discretion must be left to the or

In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) the court stated:
“We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award.”
The principles announced in Coco were affirmed in Reck v. Stevens, 373 So.2d 498 (La.1979), wherein the court stated:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion’, La.Civ.C. Art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.”
Recounting the facts of the accident, Litton while riding his motorcycle, was struck from the rear by a tractor-trailer truck. The force of the collision was such that Litton and his cycle were thrown some eighty-four feet from the point of impact. Litton was rushed by ambulance to a hospital in Coushatta, Louisiana. A doctor there sent Litton to the Bossier General Hospital. During the ambulance trip, Litton moaned, groaned, and vomited as he slipped back and forth between unconsciousness and semi-consciousness.
At Bossier General, Litton was treated by Warran D. Long, M.D. In his deposition introduced into evidence at the trial, Dr. Long stated that when he saw Litton, he was unconscious and had blood and/or spinal fluid coming from both ears. Litton also had a broken tooth. Dr. Long diagnosed Litton as having probable biauricular skull fracture with a closed head injury and cerebral contusion concussion. Litton was released from the hospital four days later and for some time thereafter he continued to suffer headaches and dizzy spells.
About five months later, Dr. Long again examined Litton, this time at the request of Litton’s family who was concerned about his personality change and memory deficit. Dr. Long referred Litton to Donald K. Gucker, a clinical psychologist. Later Litton was examined by Dr. Ronald E. Goebel, also a clinical psychologist. Both psychologists administered a battery of psychological and neuro-psychological tests. The results of these tests were substantially the same, but before going into them, we note that both psychologists agreed that the results suggest no effort by Litton to malinger. In fact, they felt that Litton has given his best and if anything had downplayed his condition.
From the multiple tests each administered, both psychologists concluded that Litton suffered organic brain damage, that he experienced mild to moderate depression, anxiety, impulsiveness and withdrawal, and that the brain damage would be apt to cause some degree of the symptoms above mentioned.
In addition to the medical testimony, the trial judge also heard testimony given by several of Litton’s close friends and family. Unlike the medical testimony which probed only Litton’s post accident personality, this lay testimony offered a view of both Litton’s pre and post accident personality, allowing a comparison basis. In the words of Litton’s friends and relatives, before the accident Litton was “outgoing”, “nice”, “friendly”, “outstanding”, “pleasant”, “talkative”, “not reserved”, “jovial”, “active” and “an all around guy”. After the accident he was “withdrawn”, “depressed”, “slower”, “evasive”, “standoffish”, “not as quick witted” and “not as super”. The consensus of this lay testimony was that the *545 accident caused the personality change in Litton.
Considering Litton’s general damages, pain, suffering, and serious personality changes resulting from brain damage, the trial judge awarded Litton $60,000.
We have carefully analyzed the entire record within the parameters set by our Supreme Court in Reck v. Stevens, supra, and conclude that the award of the trial court must stand.
For the above and foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.