DOUCET, Judge.
This appeal in a damage suit presents two factual issues for determination:
1. Whether the trial court erred in concluding that there was no causal connection between the accident and the plaintiffs low back or psychiatric problems; and
2. Whether the damages awarded were inadequate.
The trial judge rendered a well-reasoned opinion which thoroughly discusses the evidence and decides these two issues. We have thoroughly reviewed the record and find that no manifest error was committed by the trial court. We adopt its reasons as our own. Those reasons are as follows:

“Procedural Background

Plaintiff, Elia D. Buteau, individually and on behalf of the community of ac-quets and gains existing between herself and her husband, filed suit against State Farm Mutual Automobile Insurance and Allen Foco, Sr., individually and as administrator of the estate of his minor child, Janie Foco, for damages arising from an automobile accident between Plaintiff and Janie Foco on May 20,1980.
The case came for trial on August 3, 1983. Liability was not contested as Defendants admitted liability at trial. The only issue remaining before the Court was the issue of quantum.

Findings of Fact and Reasons for Decision

The accident sued upon occurred at the intersection of Dalbor and Doll Streets, in Jeanerette, Louisiana, at approximately 6:00 p.m. Plaintiff was driving a 1979 Chevrolet. Defendant was driving a 1979 Ford owned by her father, with his permission, and insured by State Farm. Doll and Dalbor Streets are both two-way, undivided, hard-surface streets. Traffic on Dalbor is controlled by a stop sign at the intersection. Defendant approached Doll on Dalbor and stopped at the stop sign. Plaintiff approached Dal-bor on Doll and stopped to make a left turn onto Dalbor. Defendant made the turn onto Doll and hit the left side of Plaintiffs vehicle between the front tire and the door. Minor damage to Plaintiffs vehicle necessitated repairs total-ling' $277.20.
The day after the accident, Plaintiff went to her family physician, Dr. Harold Gonsoulin, with complaints of pain in her left scapular region and left shoulder and numbness in her left arm. Dr. Gonsoulin testified in deposition that his examination revealed mild tenderness over the left scapula with no spasms and no lumbar complaints. He diagnosed Plaintiff as having acute muscle strain and contusion of the left scapular region. Treatment consisted of analgesics and a heating pad. As far as Dr. Gonsoulin knew, restrictions or inhibitions on her work or recreational activity did not result.
However, Buteau and her husband testified that she was forced to relinquish her usual recreational activities of trolling, boating, fishing, bowling and gardening. Both Buteau and her husband stated that their marital relationship was adversely affected.
A month later, when Buteau still had upper back complaints, Gonsoulin ordered x-rays. However, these revealed nothing abnormal. Between May and December, 1980, Buteau made repeated visits to Gonsoulin for various complaints, including upper back pain and other, unrelated problems. By August 6, 1980, Buteau summarized her back problems to Gonsoulin saying ‘her neck and back hurt her occasionally but nothing continuous or bad’, and Dr. Gonsoulin viewed her back problem as essentially resolved.
On December 3, 1980, Buteau made her first complaint of lower back pain to Gonsoulin. From this point on, Buteau saw a series of doctors about her lower back complaints. Even though Gonsou-lin’s records do not show any complaint of lower bafti" discomfort in over seven *768 (7) office visits during six and a half (672) months, Buteau began to tell the doctors she consulted subsequently that her lower back problems dated from the time of the 1980 accident.
On January 26, 1981, on referral by Gonsoulin, Buteau saw Dr. Rivet, a neurosurgeon. Rivet found no evidence of a neurosurgical problem, so made an appointment for her to be evaluated by Dr. Dunlap, a neurologist. Dunlap found no signs of abnormality so diagnosed her problem as a mechanical complaint with no neurological problems. Dr. Thomas Laborde, a physical medicine and rehabilitation specialist, saw Plaintiff for the first time on August 23, 1982. He diagnosed her as having chronic lower back and extremity pain of undetermined etiology. Dr. D.E. Richardson, a neurological surgeon, saw Plaintiff when she came to the Tulane University Medical Center pain rehabilitation unit in November-December, 1982. Dr. Richardson’s diagnosis was of psychogenic pain and chronic depression. Through the course of Bu-teau’s consultation with these physicians she underwent x-rays, CT scans, myelo-grams, electromyelograms, and nerve conduction studies. None of these revealed anything abnormal.
Buteau underwent psychiatric evaluations in November-December, 1982, at Tulane’s pain rehabilitation unit and on April 21, 1983, in Abbeville, under Thomas Latour. At Tulane it was determined that Plaintiff had been suffering from depression for quite some time, and chemical studies indicated that she may have suffered from depression all of her life. The death of Buteau’s child, eight years earlier, was noted as the probable starting point for her current severe depression and the nature of family support for her illness was found to exacerbate her problem. The only connection Richardson made between the accident and Buteau’s psychological problems was to note that the fact that the case was in litigation may have increased her complaints of pain or intensified her depression. Dr. Latour examined Plaintiff, at her attorney’s request, three years after the accident. Plaintiff told Latour that her lower back problems started at the time of the May, 1980 accident. She also told him that she had had thirteen operations on various organs of her body. He diagnosed her as having psychological problems, in the form of an hysterical personality, of long standing. He initially theorized that Plaintiff’s psychological problems created a vulnerability that was breached by the accident, in effect that she had been a ‘walking stick of dynamite waiting to go off’. He suggested that she had a hysterical conversion reaction to the accident which was manifested by lower back pain. However, he found that if the pain did not start until six months after the accident, as Gonsoulin’s records reflect, then he must ‘wonder if there had been any precipitating or traumatic event that ... happened right prior to the onset of the pain.’
In order to recover damages, Plaintiff bears
‘the burden of proving both the existence of the injuries of which she complains and the causal connection between them and the accident ... Such proof must be shown to a legal certainty and by a reasonable preponderance of the evidence. A mere possibility is insufficient.’ (cites omitted) Young v. Department of Hospitals, 365 So.2d 848, 852 [La.App. 3rd Cir.1978) writ denied 368 So.2d 137 (La. 1979)].
The Court finds that Plaintiff's own testimony, and that of her treating physician, prove that she suffered short-term, upper back strain as a result of the accident. Plaintiff suffered an immediate onset of upper back and shoulder pain, which was not resolved until three months after the accident. However, the evidence does not show a causal relationship between her lower back problems and the accident. Her lower back complaints did not begin until *769 six months after the accident and none of the physicians she consulted subsequently were able to find an objective, organic basis for her complaints.
Louisiana jurisprudence also recognizes that damages may be recovered where physical pain, suffering, and disability arise as a result of a traumatic or conversion neurosis. This syndrome is one in which latent anxieties, tension, or insecurities in a person’s mental life are converted into physical symptoms as real as if physically caused. Coco v. Richland General Contractors, Inc., 411 So.2d 1260, 1264 (La. App. 3rd Cir.1982), writ denied 413 So.2d 909 (La.1982). However,
‘... our courts have adopted the rule that since the symptoms of traumatic neurosis are vague, nebulous, and almost entirely subjective, the Courts should exercise great caution in allowing recovery for such a condition’, (cites omitted) Id. at 1263.
Buteau was clearly not enjoying good health prior to this accident. She had suffered the loss of her child. A prior auto accident had forced her to undergo a cervical disc fusion. She had gone through a series of operations on various body parts. She had also suffered from depression for a number of years. The two psychiatric evaluations that were made revealed long standing psychological problems. Neither the Tulane staff nor Dr. Latour were able to identify the 1980 accident as the source of her current complaints. Therefore, the Court finds that the evidence is insufficient to prove that the accident caused, reactivated, or exacerbated her psychological problems and psychogenic physical complaints.” (Judge’s references to depositions omitted.)
Judgment was rendered accordingly.
For these reasons the judgment of the trial court shall be affirmed. Plaintiff-appellant shall pay the costs of this appeal.
AFFIRMED.